always used in its technical sense. Thus the language of the Court of Appeals in Manhattan Co. v. Kaldenberg, 165 N. Y. 1, 10, 58 N. E. 790, 793, is "there was evidence that Faber tendered his resignation," yet, as it was "tendered" "to take effect immediately," it was held to be a resignation not requiring acceptance. So here the context shows it to have been the intention of the writer to resign immediately. He signs himself "Your former fellow-member," as if the relation had already been severed. He speaks also of returning the club flag and the certificate which entitled him to fly it. The intention of the writer, as gathered from the terms of the instrument itself, was to resign immediately. This was the understanding of the committee, who speak of it in their resolution as a "resignation," and not as a "tender."

[3] Acceptance was a purely perfunctory act which could not be delayed in its effect. Petitioner was no longer a member of the club when he attempted to recall his resignation, and could regain membership only by the method prescribed in the club constitution; that is to say, by election. Plaintiff is equally without standing in court, if it be assumed that he tendered his resignation and that it was accepted only after it had been withdrawn. His case amounts to this: That being in every respect a member in good standing the club accepted his resignation although he never offered to resign. Clearly on that theory the club's action is a nullity as if it had never acted. What, then, is the court to do? It cannot direct the club members to convene and elect him. All the club members are not parties defendant, and it would be an absurdity to elect to membership one who is already a member. The court will not direct a resolution to be adopted rescinding the resolution of acceptance, because a nullity may be rescinded only when it is a menace to rights. The situation of relator is not that of a member who has been expelled and has to endure the stigma of expulsion. Summarized, the situation is: The relator had an unqualified right to withdraw from membership. He exercised that right by sending a letter of resignation. The moment it was received he ceased to be a member, and was no longer subject to liabilities or possessed of privileges. His letter of recall had no force, since he had no standing then as a member, and the acceptance of his resignation was a mere formal, though quite unnecessary, recognition of an accomplished fact.

Mandamus refused, with costs.

---

### BREWSTER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Third Department. May 3, 1911.)

1. CARRIERS (§ 153*)—CONTRACT OF SHIPMENT—RELEASE OF LIABILITY.

General words in a contract of carriage are not sufficient to release a carrier from negligence, but, if such a result is intended, it must be expressly provided for; and hence, where a bill of lading in a shipment of glass contained a condition that defendant would not be liable for damages to glass by breakage or for any cause, if it should be necessary or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was usual to carry such property upon open cars, and the words "Loaded and secured by shipper, released," were written upon the face of it, the defendant's liability for negligence remained unaffected.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 687–690; Dec. Dig. § 153.*]

2. CARRIERS (§ 132*)—NEGLIGENCE—LIABILITY—BURDEN OF PROOF.

The burden of proving a carrier's negligence in handling a shipment is on the plaintiff; but he is not required to point out the precise act or omission in which the negligence consists, and proof of the nature of an accident may afford prima facie proof of negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582; Dec. Dig. § 132.*]

3. CARRIERS (§ 132*)—NEGLIGENCE—PRESUMPTIONS—EVIDENCE.

In an action against a railroad company for damage to a shipment of plate glass, if the glass was not broken after its delivery to plaintiff, evidence held sufficient to make out a prima facie case of negligence, and to throw upon defendant the burden of proving that it exercised due care.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 578–582; Dec. Dig. § 132.*]

4. CARRIERS (§ 134*)—NEGLIGENCE—EVIDENCE.

In an action against a railroad company for damage to shipment of plate glass, evidence held to clearly show that it was not broken after delivery to plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 588–593; Dec. Dig. § 134.*]

5. CARRIERS (§ 52*)—NEGLIGENCE—LIABILITY—RECEIPT—ESTOPPEL.

Where plaintiff's cartman was obliged to sign a receipt before taking a box containing plate glass from defendant's road, stating that the goods were received in good order, and he signed it without examination, it does not estop the consignee from maintaining an action against defendant for damages for its negligence, or preclude him from showing the actual condition of the glass.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 150–161; Dec. Dig. § 52.*]

Appeal from Schenectady County Court.

Action by Daniel S. Brewster against the New York Central & Hudson River Railroad Company. From a judgment of the City Court for plaintiff, affirmed by the County Court, defendant appeals. Affirmed.

The following is the opinion of the County Court:

The plaintiff recovered judgment in the City Court of the city of Schenectady for damages for the breaking of a piece of plate glass, alleged to have been caused by the negligence of defendant as a carrier. The glass was shipped by Sutphen & Myer, at New York City, to plaintiff, at Schenectady, N. Y., via defendant's railroad. The case is here for a new trial.

The contract of shipment was set forth in a bill of lading, which contained a condition to the effect that defendant should not be liable for damage to the glass, by breakage or from any cause, if it should be necessary or was usual to carry such property upon open cars, and the words "Loaded and secured by shipper, released" were written upon the face of it. The freight was paid. The glass was 9 feet by 10 feet in size, and three-eighths of an inch thick. Plaintiff's consignors packed and boxed it, carted it to defendant's yard, and loaded and secured it on a platform car furnished by defendant. They did this work carefully and properly. Defendant received the consignment May 4, 1907, in good condition, and knew that it was plate glass. It reached Schenectady on or about May 9, 1907, and was delivered to plaintiff's cartman May 13, 1907. The box was properly secured on the car at this time and was not broken. The cartman, without examining, gave

a receipt which stated in printed words that the property was received in good order. He unloaded the box from the car, loaded it on a wagon designed and used for carting glass, carted it over paved streets to the place where it was to be used, placed it in an almost perpendicular position against an abutment of defendant's overhead crossing, adjoining this place, and blocked it securely. He was experienced in work of this kind and did it carefully. The box remained in this position and was not disturbed until May 15, 1907, when it was opened. The packing was found to be secure and in position, but the glass was at the bottom and in the middle of the box, and was broken into many pieces, varying in size from 24 by 30 inches to small, ground pieces, the latter filling several bushel baskets. It was conceded that the glass was worth the sum of $74.38.

[1] General words in a contract of carriage are not sufficient to release a carrier from the consequences of its negligence. If such a result is intended, it must be expressly provided for in the contract. Mynard v. Syr., etc., R. R. Co., 71 N. Y. 183, 27 Am. Rep. 28; Canfield v. B. & O. R. R. Co., 93 N. Y. 537, 45 Am. Rep. 268; Rathbone v. N. Y. C. & H. R. R. Co., 140 N. Y. 48, 35 N. E. 418. So that, notwithstanding the provisions of the bill of lading, defendant's liability for negligence in the handling and transportation of the glass remains unaffected.

[2] The burden of proving that defendant was negligent undoubtedly rests upon plaintiff. He is not required, however, to point out the precise act or omission in which the negligence consists. Proof of the nature of an accident may afford prima facie proof of negligence. Lamb v. C. & A. R. R. Co., 46 N. Y. 271, 7 Am. Rep. 327; J. Russell Mfg. Co. v. N. H. S. Co., 50 N. Y. 121; Wintringham v. Hayes, 144 N. Y. 1, 38 N. E. 999, 43 Am. St. Rep. 725. In the Lamb Case, supra, 46 N. Y. at page 279, 7 Am. Rep. 327, the court says: "Cases may occur where the proof of loss and circumstances connected therewith may show a case of presumptive negligence in the defendant, such as will entitle the plaintiff to recover upon that ground, in the absence of further proof." And in the Russell Mfg. Co. Case, supra, Judge Rapallo says, at 50 N. Y. 127: "Where the accident is one which in the ordinary course of events would not have happened, but for the want of proper care on the part of the defendant, it is incumbent upon him to show that he has taken such precautions as prudence would dictate; and his failure to furnish the proof, where, if it existed, it would be within his power, may subject him to the inference that such precautions were omitted."

[3] The glass was delivered to defendant May 4, 1907, in good condition, and properly packed, loaded, and secured on a platform car. It reached Schenectady May 9, 1907, and was delivered to plaintiff May 13, 1907. The box at this time was secure on the car and was not broken. It was not opened until two days thereafter, and then it was discovered that the glass was broken. If the glass was not broken after its delivery to plaintiff, then the evidence is sufficient to make out a prima facie case of negligence, and to throw upon defendant the burden of proving that it exercised due care. Canfield v. B. & O. R. R. Co., 93 N. Y. 537, 45 Am. Rep. 268; Rieser v. Met. Ex. Co., 45 Misc. Rep. 632, 91 N. Y. Supp. 170; Campe v. Weir, 28 Misc. Rep. 243, 58 N. Y. Supp. 1082; Bowden v. Fargo, 2 Misc. Rep. 551, 22 N. Y. Supp. 889. That it was not broken after such delivery is apparent. The care exercised in unloading and carting the box and in placing and bracing it against the abutment, where it remained apparently undisturbed until it was opened, the condition of the box and of the packing at the time of unpacking, the thickness of the glass and its position and condition, broken as it was into small pieces at that time, are facts which not only preclude the inference that it may have been broken after the delivery to plaintiff, but show clearly that it was not then broken.

[4] The defendant has presented no proof of care and has offered no explanation. So that the evidence discloses a prima facie case of negligence, which, in the absence of such proof of care, will sustain a finding of negligence.

[5] The receipt signed by the cartman, stating that the goods were received in good order, does not estop plaintiff from maintaining the action, nor does it preclude him from showing the actual condition of the glass. Monell v.

N. C. R. R. Co., 16 Hun, 585. The cartman was obliged to sign the receipt before he could obtain possession of the glass, and he signed it without examination. As a statement of facts, it might be contradicted.

The plaintiff is entitled to the judgment demanded, with costs.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Angle & Strong, for appellant.

Robert B. Craft and Henry S. Baehler, for appellee.

PER CURIAM. Judgment unanimously affirmed, with costs, upon the opinion of Whitmyer, County Judge.

───────

HENRY PELS & CO. v. DAVID M. OLTARSH IRON WORKS OF NEW YORK.

(Supreme Court, Appellate Term.   May 18, 1911.)

1. SALES (§ 479*)—CONDITIONAL SALES—BREACH BY BUYER—REMEDIES OF SELLER.

On a breach of a conditional sale contract by the buyer, the seller may disaffirm the sale and retake the chattel, or he may ratify the sale and sue on the contract, and his remedies are inconsistent, so that, where an election is made, it is final.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1438; Dec. Dig. § 479.*]

2. SALES (§ 479*)—CONDITIONAL SALES—BREACH OF CONTRACT—ACTION FOR PRICE—EFFECT.

The commencement of an action by a seller on a note for a part of the price of goods sold under a conditional sale contract is an irrevocable election to ratify the sale, though the buyer has breached the contract, and he cannot subsequently sue to disaffirm the sale and retake the goods.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1438; Dec. Dig. § 479.*]

3. SALES (§ 479*)—CONDITIONAL SALES—ACTION FOR RECOVERY OF CHATTELS SOLD—EVIDENCE.

In an action by a seller in a conditional sale contract to recover the chattel sold for the nonpayment of the price, evidence that the seller had previously brought an action on a note given for a part of the price is admissible under a general denial.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1418–1438; Dec. Dig. § 479.*]

Appeal from City Court of New York, Trial Term.

Action by Henry Pels & Co. against the David M. Oltarsh Iron Works of New York. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, GUY, and BIJUR, JJ.

Frankenthaler & Sapinsky (Joseph Sapinsky, of counsel), for appellant.

Edgar N. Dollin (Bruce R. Duncan, of counsel), for respondent.

GUY, J. Defendant appeals from a judgment entered upon the verdict of a jury in favor of plaintiff awarding the plaintiff possession of

───────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes